[No. 2,866.]

LYSANDER COLLINS *v.* HORACE D. BARTLETT
ET AL.

SCHOOL LAND WARRANTS.—The location of school land warrants, issued by this State, prior to the survey of the land on which they are located by the United States, is void.

WHEN PURCHASER OF LAND IS NOT A TRUSTEE FOR ANOTHER.—The facts that two parties purchase separate tracts of land from one who had located school land warrants on the same before the land was surveyed by the United States, and which location was consequently void, and that said parties acquired possession of said tracts by virtue of said purchase, do not create the relation of trust or confidence between them, so as to make a subsequent purchase from the United States, of all the land, by one of the parties, as a preëmptioner, inure to the benefit of the other party in equity.

IDEM.—When two or more persons separately purchase distinct parcels of land from a common grantor, who possesses the same under an invalid title, and one of them afterwards acquires the true title to the whole, he does not

hold the true title as trustee for the other, nor is he estopped from denying that the purchase from the holder of the invalid title was void.

Cross-Complaint.—Neither an agreed statement of facts nor a finding of facts can add a material fact to a cross-complaint, for it must fall unless it can stand on its own allegations of facts.

Act of Congress Confirming State Land Sales.—The Act of Congress of July, 1866, to quiet land titles in California, provides the means by which an invalid location of a State school land warrant on unsurveyed lands may be confirmed, but in order to obtain such confirmation the purchaser must present and prove up his purchase and claim within the time allowed to preëmptioners under existing laws. The land will not be certified to the State until the claim is presented and proved up.

Idem.—No title to such lands passes from the United States to the State, or to the purchaser from the State, until the same are certified over to the State by the Commissioner of the General Land Office at Washington.

Idem.—If one holding public land under an invalid location of State school land warrants, made before the passage of the confirmatory Act of Congress of July, 1866, fails to present and prove up his claim under said Act, and another, after the passage of said Act, preëmpts the land and obtains a patent therefor, he acquires the legal title.

Attack on Patent.—A party claiming land under a patent from the United States has the benefit of the presumption that the officers rightly performed all their duties in selling the land and issuing the patent, and it devolves on the party assailing the patent to show that it was issued without authority of law.

Declaratory Statement by Pre-emptioners.—There are some classes of lands subject to preëmption which may be purchased by preëmptioners without filing declaratory statements, such as lands reserved for railroad purposes which have been settled on; and one attacking a patent issued to a preëmptioner on the ground that no declaratory statement was filed, must show that it belonged to that class of lands to purchase which a declaratory statement is required.

Improvements on Public Lands.—All improvements on public lands of the United States, which become a part of the realty, pass to the purchaser from the United States.

Act Allowing Improvements on Public Lands to be Removed.— The Act of the Legislature of this State (Stats. 1867-8, p. 708), allowing those who have put improvements on lands of the United States, to remove the same within six months after the lands shall have become the private property of any person, in so far as it relates to improvements which are a part of the realty, is void, because in conflict with the Act admitting this State into the Union.

Appeal from the District Court of the Third Judicial District, Santa Clara County.

Ejectment to recover the northeast quarter of the south-east quarter of section five, township nine south, range one west, Mount Diablo base and meridian, and the improvements thereon. Younger & Logan, the lessors of defendants, were allowed to appear and defend the action. They deny the allegations of the complaint, and, by way of cross-complaint, aver that they are the owners in possession, and entitled to possess a portion of the land sued for by plaintiff, and describe the same as follows: Bounded on the west and north by land now in the occupancy of L. Collins; south by a small creek, on which Weldon's mill formerly stood, and known as Froment Creek; east by Los Gatos Creek. Said parcel of land, containing about two acres, being fenced off from the residue of said land, and well known as the "Forest House Lot." The defendants admit they are in possession of and claim title and right to it. As to all the residue of the land sued for by plaintiff, they disclaim any right to it, and deny any entry upon the same.

Defendants further, by bill in equity and cross-complaint, aver that in May, 1852, the whole of the land described in plaintiff's complaint was unoccupied public land of the United States; that, in 1853, three school land warrants, properly issued and duly purchased for locating, in the aggregate, six hundred and forty acres of land, were located by Jones & Belden, upon a tract of land, including the premises in dispute; that the issuance and location of these school land warrants were, in all respects, in due form, and according to law; that Jones & Belden went into possession of this tract of land, resided upon, and made improvements upon it, and that they and their grantees had continued to reside uninterruptedly upon this two-acre tract till the present time, making and maintaining permanent improvements upon the same; that, in 1858, Jones & Belden sold and transferred the possession of the whole of this tract to one Henning, and also transferred to Henning the school land warrants re-

ferred to; that Henning, in September, 1861, sold to Howe eighty acres, including the two-acre tract; that, in May, 1863, Howe sold to Froment the two-acre parcel; Froment afterwards sold the same to White, and White to Younger & Logan; that each of said several sales was for a valuable consideration, and the possession was transferred, and the occupancy continuously maintained by said several owners, and large and permanent improvements, exceeding in value ten thousand dollars, maintained upon this lot; that plaintiff, Collins, in 1862, purchased from Henning one acre of land, and, in 1864, he purchased from Howe the eighty-acre tract, before that time by Howe purchased from Henning, Howe reserving in his deed to Collins the two-acre tract before sold to Froment; that the purchase, possession, and sole claim then made and asserted by Collins was under the school warrant location, before recited; that after this purchase and entry, and while plaintiff was thus in possession of a portion of said land, holding and claiming the same under said school warrant location, and while said White was, in like manner, in possession of the two-acre tract, and other parties in possession of small tracts, before described, said land was surveyed by the United States Government; and immediately thereafter, in 1867, plaintiff applied to preempt, and preëmpted under the United States land laws, the land described in his complaint, and including the two-acre tract of defendants, as also tracts and parcels of land owned by several other parties; that plaintiff has received a United States patent for one hundred and sixty acres, under said preëmption; that the procuring of such patent is in fraud of the rights of the defendants; that defendant has demanded of him a conveyance of the two acres herein described, and tendered his proper proportion of the costs of procuring such patent, but that plaintiff refuses to convey the same. Answer further avers that improvements, consisting of houses, barns, and other buildings, of the value of ten thousand dollars,

were placed in good faith upon said two-acre tract, while the same was public land of the United States, in possession of defendants, by defendants and their grantors, and that such improvements are now maintained thereon.

Defendants prayed that plaintiff be required to convey to them said two-acre tract, they tendering their proportionate share of the costs of said preëmption and the expenses of such conveyance; or that they be adjudged authorized to remove from said lots the buildings by them placed thereon, and for general relief.

To this plaintiff filed a replication denying all the new matter set up in the cross-complaint. The Court below dismissed the cross-complaint and rendered judgment for the plaintiff. The defendants appealed.

*David Belden,* for Appellants.

The location of the school warrant by Jones & Belden in 1853 would have vested the entire beneficial interest in this land in the locator, had the land at the time been surveyed. (*People* v. *Shearer,* 30 Cal. 30 ; *Bludworth* v. *Lake,* 33 id. 662.) The purchase of the warrant, the location, residence, and improvements, establish conclusively the good faith of our acts, and bring us fully within the purview of the Act of Congress of 1866. Section three secures to the locator on lands unsurveyed at the passage of the Act, the rights of preëmption—requiring him, however, to pursue the course prescribed under the general preëmption laws. Those who had located upon surveyed lands required no protection, and are not referred to in the Act. (*Lyle* v. *Arkansas,* 9 Howard, cited in *Hutton* v. *Frisbie,* 37 Cal. 512.) Nor under this section was it necessary, to constitute the survey, that the plat should have been returned. A survey, in fact, was all that Congress required. The Act was not one of a general system, but confined to one State—applicable to but a single class of cases, with a special purpose in

view. Congress could have bestowed this land absolutely upon the occupants, had it seen fit (*People* v. *Shearer*, ante), and could have imposed conditions, many or few, at its discretion. It contented itself with requiring that the land had been surveyed by authority of the United States.

That the vendee in possession of lands will not be allowed to procure an outstanding title to be used against his vendor or his vendor's grantee, is a familiar rule of equity. He may procure such title, but will not be suffered to employ it to the injury of his co-vendee. (*Ellis* v. *Jeans*, 7 Cal. 416.) *Van Horn* v. *Fonda*, 5 John. Ch. 390, is the leading American case upon this subject, and the rule there asserted "that when two devisees are in possession of land under an imperfect title devised to them by their common ancestor, one of them cannot buy up an outstanding or an adverse title to disseize his co-tenant, but such purchase will inure to their common benefit, subject to an equal contribution to the expense." (*Bush* v. *Marshall*, 6 Howard U. S. 291; *Galloway* v. *Finley*, 12 Peters, 295 ; *Rothwell* v. *Dewes*, 2 Black, 619.) Another view may be taken, strengthening this equitable estoppel against the plaintiff. When he purchased under the school land warrant, he took but an equitable interest in the land. The State, as trustee, held the legal title. When the patent should issue, it would be in gross, conforming to the school warrant. The State department had neither the power nor the machinery to ascertain and apportion to the several grantees their respective interests. The patentee would be, by his very relation to the subject matter, made a trustee for all his fellows—bound to convey to them the legal title, according to their respective interests. This was the position he assumed by purchasing a fractional part of a whole location—the right to demand the fee for his own interest, or the duty of making it to the others. (*Salmon* v. *Symonds*, 30 Cal. 307 ; *Bird* v. *Ward*, 3 Mo. 382 ; *Grove* v. *Folsom*, 16 id. 548.)

Plaintiff acquired his possession from our grantor, and it was this possession that enabled him to secure the title and his present advantage. The general doctrine that charges the patentee holding the legal title with a trust in favor of the equitable claimant, is fully recognized in *Thredgill* v. *Pintard*, 12 Howard, 38 ; *Stark* v. *Starr*, 6 Wallace, 419 ; *Bludworth* v. *Lake*, 33 Cal. 263. Nor is our claim affected by the fact that it was before the land officers, and was rejected. (*Megerle* v. *Ashe*, 33 Cal. 93 ; *State of Minnesota* v. *Bachelder*, 1 Wallace, 115 ; *Cunningham* v. *Ashley*, 14 Howard, 377; *Lindley* v. *Hawes*, 2 Black, 558.)

Plaintiff relies upon his patent, and the findings show that plaintiff's only application to preëmpt was made at least nine months before the plat of survey was filed in the Land Office. Such filing was premature, and useless for any purpose. (Lester's U. S. Land Laws, 696; *Terry* v. *Megerle*, 24 Cal. 624 ; *Grogan* v. *Knight*, 27 id. 520 ; *Page* v. *Hobbs*, 27 id. 483 ; *Megerle* v. *Ashe*, 33 id. 74.) An application, to be made in conformity with the law, is the officer's power to act—of his authority to issue the patent. A patent issued without such application would be void. A patent issued without proper authority is void. (*Patterson* v. *Winn*, 11 Wheaton, 380; *Easton* v. *Salisbury*, 21 Howard, 430.)

*Moore & Laine*, and *Leib*, for Respondent.

No declaratory statement was required if the land was within the limits of a reservation made for the benefit of a railroad, as it was, part of an odd section. That it was within the limits of the reservation for the benefit of the Western Pacific Railroad the Court will judicially notice. (9 Wisconsin, p. 160; 1 Greenleaf on Ev., Sec. 6). In such case no declaratory statement is required. (See Act of Congress, April 27th, 1854; Lester, 213, No. 234; instructions

thereon, Lester, 376, No. 413; see, also, the decision of J. S. Wilson, Commissioner of the General Land Office, in the case of *Watson* v. *The Western Pacific R. R. Co.*, dated March 29th, 1869, Land Laws of 'the United States, by Zabriskie, 101.)

We recognize the rule laid down in *Patterson* v. *Winn*, 11 Wheaton, 380, and *Eastin* v. *Salisbury*, 21 Howard, 430, as correct wherever a case is presented to which such a rule applies, but this case is not one of them. The plaintiff claimed land by preëmption, obtained a patent therefor, and there is no question about the authority of the Federal officers to issue such a patent.

It is claimed that the said Act of July 23d, 1866, confirmed the State selections, and withdrew the lands covered by them from preëmption. Neither proposition is true; all that was done by such Act was to provide for the validation of the State selections, made on unsurveyed land, which were void, both by the decisions of the State and Federal Courts; but these selections were not to be cured where they interfered with prior preëmption rights. (*Toland* v. *Mandell*, 38 Cal. 30.)

In this case there is no showing that anybody ever made any attempt to have the void State selection cured. No one ever presented it to the Federal Land Office, or offered any proof in its support. White, the party through whom the defendants claim, ignored such State claim, claimed under the preëmption laws, and lost in the fight.

Counsel has cited numerous authorities to the proposition that where one has a legal title to land, by patent or otherwise, to which another is entitled in equity, that a Court of equity will treat the holder of the legal title as a trustee for the equitable owner, and compel a conveyance. This was a work of supererogation; we never disputed such a proposition. But what we do dispute is that neither White nor the defendants ever had any equity in the premises. The admissions, as we have seen, show that the State location of

the five hundred thousand acre warrants was made under the State law upon unsurveyed public land of the United States, and void. (*Terry* v. *Megerle,* 24 Cal. 609; *Grogan* v. *Knight,* 27 Cal. 520).

The State never acquired any interest in the land, legal or equitable, and of course could convey nothing. Nor did she, or any one in her behalf, undertake to have the void selections cured. The land was never certified over to the State.

It is claimed that because Collins bought a claim to portions of this void State selection, and afterwards by a pre-emption entry and purchase of the same and other land from the United States, the real owner of the soil, that he is estopped from claiming under such preëmption purchase. This needs no refutation. (See, however, *Blight* v. *Rochester,* 7 Wheaton, 548; *Watkins* v. *Holman,* 16 Peters, 54; *Asterhaus* v. *Shoemaker,* 3 Hill, 518; *San Francisco* v. *Lawton,* 18 Cal. 476.)

The plaintiff in this case did not claim under the State location. He knew it was void and of no value whatever, and he relied on his preëmption claim; pressed it to final issue and obtained his patent, upon which he solely relied.

The Act of the Legislature allowing the improvements to be removed is unconstitutional and void. (*Billings* v. *Hall,* 7 Cal. 1; *Lathrop* v. *Mills,* 19 Cal. 531; *Pioche* v. *Paul,* 22 Cal. 105.)

By the Court, RHODES, J.:

This is an action of ejectment. The defendants answered and also filed a cross-complaint.

The equity set up in the cross-complaint is based on these facts: In 1853 Jones & Belden located school land warrants on these and other lands, entered into possession thereof, and made improvements thereon; and in 1858 they sold and con-

veyed the same to Henning; and in 1861. Henning sold to Howe a tract containing eighty acres, including the two-acre tract—the tract in controversy. In 1863 Howe sold the two-acre tract to Froment; Froment afterwards sold the same to White; and White sold the same to Younger & Logan, the lessors of defendant Bartlett. Each of the purchasers successively took possession and maintained valuable improvements on that tract. Henning sold to plaintiff one acre of land in 1862; and Howe, in 1864, sold to plaintiff all of the eighty-acre tract except the two-acre tract; and plaintiff entered, claiming solely under the school land warrant location. In 1867, while the several purchasers under Howe were in possession of the respective parcels claimed by them, the lands were surveyed by the United States, and immediately thereafter the plaintiff applied to preëmpt and preempted one hundred and sixty acres (which include the lands in suit) and has received a patent therefor. It is alleged " that the procuring of such patent is in fraud of the rights " of the defendants.

The location of the school land warrants in 1853, prior to a survey of the land, was void. The authorities on this point are too numerous to require citation. The fact that both the plaintiff and the defendants purchased distinct parcels from the same party, and by virtue thereof acquired the possession of their respective parcels, creates no relation of trust or confidence between them; nor will it render a subsequent purchase by one party of both parcels fraudulent as to the other party, nor make such subsequent purchase inure, in equity, to the benefit of the other party. The facts stated in the cross-complaint show neither that the acquisition of the title by the plaintiff from the United States was fraudulent in a legal sense, nor that a trust was thereby created in favor of the defendants.

Had it been alleged that between the defendants, or those under whom they claim, and the plaintiff, the relation existed

of tenants in common, or of mortgagor and mortgagee, or vendor and purchaser under a contract which remained wholly or partially unperformed on the part of the plaintiff, or some other relation, showing an existing obligation or liability on the part of the plaintiff to the defendants or their grantors, we might be required to investigate and determine questions of trust, estoppel, and the like, arising between the parties; but where, as in this case, two or more persons separately purchase distinct parcels of land from a common grantor, holding under an invalid title, and one of them thereafter acquires the true title, those questions do not arise, for there is not a single fact on which to build up a trust or an estoppel.

This leaves for consideration only the questions relating to the legal title, and the incidental question in respect to the improvements on the two-acre lot, claimed by the defendants. In considering the cross-complaint, we have accepted as true all its allegations, but the agreed statement of facts and the finding have not been considered in connection with the cross-complaint, for they cannot be regarded as adding thereto any further fact. The cross-complaint must fall unless it is sustainable on its own allegations of fact.

The patent issued by the United States to the plaintiff is prima facie valid, and it conveyed the title, unless the defendants acquired the title by virtue of the location of the school land warrants, and by the aid of the Act of Congress of July 23d, 1866, to quiet land titles in California, or unless the patent was issued without authority of law, and therefore void. The Act of 1866 (14 U. S. Stats. 218) confirms certain invalid selections of land, theretofore made under the authority of the State; or, more properly speaking, the means are thereby provided by which the selections may be confirmed and the title to the lands acquired. The selection, in this case, comes under the provisions of the third section of the Act, as the lands were not surveyed at the

passage of the Act. Under the public land system of the United States, lands are not treated as surveyed until the township plat is approved by the Surveyor General and returned to the proper Register's office. The claimant is required by that section to "present and prove up" his purchase and claim within the time "allowed to preëmptioners under existing laws;" and after the purchase and claim have been presented and proven up, the Commissioner of the General Land Office is required to certify the lands over to the State. It does not clearly appear that a claim was presented under that Act; but if such was the case, it does not appear that it was proved up, or that the lands were certified over to the State. It is quite apparent that no title passes from the United States to the State, or the purchaser from the State, until the lands are "certified over" to the State by the Commissioner. No title, therefore, was acquired by the defendants, by virtue of the location of the school land warrants and the confirmatory Act of Congress.

The sole ground of attack on the patent, is that as the plaintiff's declaratory statement was filed before the filing with the Register of the township plat, it is a mere nullity; and that a patent issued without a declaratory statement having been duly filed, is unauthorized and void. The first branch of the proposition need not be considered. The authorities are not agreed upon it; but it may be accepted as sound for the purposes of this case. No authority is cited by the defendants which supports the second branch of the proposition, and none has come to our notice. It is not true that declaratory statements are in all cases required to be filed by preëmptioners, without regard to the class to which the lands desired to be purchased, belong. The Act of March 27th, 1854, for the relief of settlers on lands reserved for railroad purposes, and the rules and regulations prescribed by the Secretary of the Interior, in pursuance of that Act, dispense with the declaratory statement. (See 10

U. S. Stats. 269; 1 Lester Land Laws, 213, 376.)  As the
party claiming under a patent, has the benefits of all the
usual presumptions that the officers righly· performed all
their duties in selling the land and issuing the patent there-
for, the burden is cast on the party who assails the patent,
to make it appear that it was issued without authority of, or
contrary to law.  It was incumbent on the defendants here
to show, that the land in this case belonged to a class which
could not be purchased by a preëmptioner, without first
filing his declaratory statement.  This they have not done,
and we cannot hold that the patent is void merely for the
want of a declaratory statement.

The Act of March 30th, 1868 (Stats. 1867–8, p. 708), pro-
vides that an inhabitant of this State, who has put improve-
ments upon any lands of the United States or this State, or
has the right of possession of such improvements, may re-
move the same within six months after the lands shall have
become the private property of any person; and declares
that houses, barns, sheds, outhouses, buildings, fences,
orchards, and vineyards shall be held to be improvements
within the meaning of the Act.  This enactment raises the
question whether this State has authority to provide, that a
patent issued in accordance ·with the Acts of Congress, upon
a sale of the public lands of the United States, shall not
convey absolutely to the purchaser, all that it purports to
convey—all the real estate within the boundaries of the lands
described in the patent.  If houses, fences, orchards, and
vineyards on the lands of the United States are real estate,
they are as much a part of the freehold as the soil itself;
and the statute, by giving to them other names, does not
change their character or sever them from the land.  They
being a part of the freehold, a patent issued in the usual
form by the United States, would convey them to the pur-
chaser of the land, and the State cannot prevent them from
vesting absolutely in the purchaser by virtue of the patent,

Opinion of the Court—Belcher, J.

without interfering with the primary disposal of the public lands by the United States. When the "improvements" are in fact personal property, it needs not the aid of a statute to give the owner the right to remove them from the land, and it is equally clear that the statute, so far as it purports to give the claimant the right to remove them from lands of which they formed a part when they were sold and conveyed by the United States, is void, because in conflict with the Act admitting this State into the Union.

Judgment affirmed.