# CASES DETERMINED

## IN THE

# SUPREME COURT OF CALIFORNIA

## BUT NOT

# OFFICIALLY REPORTED.

C. C. OAKLEY, Respondent, v. J. F. STUART, Defendant; ISAAC MILLER, Intervener and Appellant.*

No. 4790; December 11, 1875.

School Lands—Application to Purchase.—Section 3495 of the Political Code, referring to applications for the purchase of school lands, is mandatory in requiring the applicant to state "that there is no occupation of such lands adverse to any he has"; or, in case there is such an occupant, in requiring the affidavit to show that the township has been sectionized three months, and that the adverse occupant has been in occupation more than sixty days.

APPEAL from First Judicial District, Santa Barbara County.

W. C. Stratton for respondent; E. Fawcett and R. M. Dillard for appellant.

RHODES, J.—This is an action to determine a contest arising in the state surveyor general's office, for the purchase of a portion of a sixteenth section of public school lands belonging to the state. The lands were surveyed in the field and the township plat approved in the year 1861, and the plat was returned to the office of the register of the local land office on the eleventh day of April, 1873. Applications for the purchase of the land were made by Linebaugh, Stuart and the plaintiff. That of the plaintiff was in all respects sufficient, and he is entitled to purchase the land

---

*For subsequent opinion, see Oakley v. Stuart, 52 Cal. 521.

1

if those of Linebaugh and Stuart, which were prior in point of time, were for any reason invalid.

The application of Stuart was made on the twelfth day of April, 1873, under the provisions of section 3495 of the Political Code. His affidavit stated that there was no occupation of the lands adverse to any he had, and failed to state that the township had been sectionized or that the plaintiff was in the adverse occupation of the lands sought to be purchased. The court found that the plaintiff entered into the possession and occupancy of a large portion of the lands between January 1 and April 1, 1873, and ditched and fenced the same, and cultivated and sowed grain thereon, and continued to occupy the same to the time of the trial of the action. The section of the Political Code above referred to requires the affidavit of the applicant to state "that there is no occupation of such lands adverse to any he has, or if there is an adverse occupant, then the affidavit must show that the township has been sectionized three months, and that the adverse occupant (giving his name) has been in such occupation more than sixty days." The court below was of the opinion that the affidavit was insufficient under the law and invalid, because it did not state the fact that the lands were in the adverse occupation of the plaintiff. That conclusion is, in our judgment, correct. It is fully sustained by Woods v. Sawtelle, 46 Cal. 390, the affidavit in that case exhibiting the same defect as that now before us: See, also, Hildebrand v. Stewart, 41 Cal. 387. It may be true, as contended by the intervener, that the words of section 3497, Political Code, "any person settling upon a sixteenth or thirty-sixth section" mean one who has made a "settlement" upon the land within the meaning of the pre-emption laws of the United States, and that such person could not claim a priority in the purchase unless he complied with the provisions of the code, but that question is not involved in the inquiry as to whether the affidavit of Stuart is valid. For the purpose of that inquiry, it is immaterial whether another person has lost his priority or right in any other respect. The failure of the affidavit to state the required facts renders it invalid.

The application of Linebaugh was made on the sixth day of January, 1871, which was after the township plat had been

approved by the surveyor general, but before it had been returned to the office of the register of the local United States land office. This presents the principal question in the case, which is, whether by the laws of this state then in force the sixteenth sections were subject to sale before the township plat had been filed in the register's office. The application was made under the act of March 28, 1868 (Stats. 1867–68, p. 507), and the amendments thereto of 1869–70 (Stats. 1869–70, p. 875). The fifty-second section provides that "whenever a resident of this state desires to purchase any portion not less than the smallest legal subdivision, of a sixteenth or a thirty-sixth section of any township in the state, which has been surveyed by authority of the United States, he or she shall make an affidavit," etc. It was held in Collins v. Bartlett, 44 Cal. 382, that "under the public land system of the United States, lands are not treated as surveyed until the township plat is approved by the surveyor general and returned to the proper register's office." Upon this proposition there is no room for doubt, and we are of the opinion that the statute in providing for the sale of lands which have been "surveyed by the authority of the United States" refers to lands which, under the land system of the United States, are deemed to have been surveyed. It was accordingly held in Rooker v. Johnson [49 Cal. 3], No. 4359, October term, 1874, that applications to purchase which had been made after the land had been surveyed in the field and the township plat had been approved, but before it had been returned to the register of the local land office, were invalid.

The act of Congress of September 4, 1841, provides for the location by the United States of the five hundred thousand acres granted to each state for the purposes of internal improvements as follows: "Said location may be made at any time after the lands of the United States, in said states respectively, shall have been surveyed according to existing laws." In respect to selections made by this state in part satisfaction of that grant, it has repeatedly been held that a valid selection could not be made until the approved township plat had been returned to the proper register's office, although the statutes of the state did not in terms require that the selections should be made after the township plat had been returned: See Terry v. Megerle, 24 Cal. 609, 85 Am. Dec. 84;

Megerle v. Ashe, 33 Cal. 82; Poppe v. Athearn, 42 Cal. 617; Collins v. Bartlett, 44 Cal. 382.

It is required by section 12 of the act of 1868, above referred to, that the state surveyor general shall, immediately after an application to purchase is made, apply to the proper United States land office to have the lands described in the application "accepted in part satisfaction of the grant under which it is sought to be located." The applications mentioned in that section include all applications mentioned in the previous section, among which are those for the purchase of portions of the sixteenth section. It may be true, as urged by the intervener, that the acceptance or approval by the officers of the land department of the location or sale by the state of a sixteenth section will not be given, or if given, will subserve no useful purpose; but however that may be, the fact that such acceptance is required, and that it cannot be had until the plat is returned to the proper register's office, tends strongly to show that it was not contemplated by the statute that a sixteenth section should be sold prior to the return of the township plat to the register's office. In corroboration of this construction it may be noticed that section 52 provides, among other things, that if there shall be adverse occupation, then he shall state (in his affidavit for the purchase of the lands) that "the township has been sectionized and subject to pre-emption three months or over." It will not be questioned that the public lands are not subject to pre-emption until the township plat is filed.

It is insisted that the proviso to the twelfth section as amended in 1870, to the effect that purchases of portions of the thirty-sixth sections may be made where "township and other lines have been established," but the township line has not been sectionized, militates against the construction already stated; but we do not think that a provision for the sale of a section before its lines are established, before the section has any legal existence (Robinson v. Forrest, 29 Cal. 325; Middleton v. Low, 30 Cal. 605), tend to show at what stage in the proceedings other lands are deemed to be surveyed within the meaning of the statute, and become subject to sale under the laws of the state.

Judgment affirmed.

CROCKETT, J.—I think Stuart's application to purchase was invalid, for the reasons stated in the opinion of Mr. Justice Rhodes. Lincbaugh's application was made under the act of March 28, 1868, by the eleventh section of which the state surveyor general is constituted the agent of the state for the sale of certain lands belonging to the state which are enumerated in that section, amongst which are included the sixteenth and thirty-sixth sections. Section 12 provides that when an application is made to purchase any of the lands "described in the preceding section," the surveyor general shall communicate immediately with the proper United States land office and ask that the lands described in the application shall be accepted in part satisfaction of the grant under which it is sought to be located; and when the acceptance of the register of the United States shall have been obtained, the surveyor general shall issue to the applicant a certificate authorizing the county treasurer to receive payment. From this provision it is evident that the certificate cannot be issued until the acceptance of the register has first been had; and it is equally clear that the register cannot accept the application until the approved plat has been filed in his office. He is then for the first time brought into such relations with the subject matter as to enable him to act understandingly. But it is said that by the act of Congress of March 3, 1853, the sixteenth and thirty-sixth sections were granted absolutely to the state, and that so soon as these sections were located by an official survey by the United States, the title of the state immediately attached and became absolute to the particular land included in these sections as thus located. Hence it is argued it would be absurd to require the United States register to approve an application to purchase land included in these sections which belonged to the state with an absolute power of disposition, and in the disposal of which the United States were in no wise interested. It is perhaps a sufficient answer to this suggestion that, whether absurd or not, the statute explicitly requires the application to be accepted by the register, and the legislature has the power to prescribe the conditions on which the lands of the state may be purchased. But the act of March 3, 1853, authorized pre-emption claims to be taken up on unsurveyed lands, and the seventh section provides that, when

a pre-emptioner shall settle on unsurveyed land which shall afterward be included in a sixteenth or thirty-sixth section, the state shall select other lands in lieu of that so taken up by the pre-emption claimant. In view of this contingency, I discover nothing absurd in requiring the application to purchase to be accepted by the register who, with the approved plat before him, can determine from the records of his office whether the land is claimed by a pre-emptioner. This view is fortified by section 52 of the act of March 28, 1868, which requires the applicant to state in his affidavit that there is no adverse occupation, or if there be, "that the township has been sectionized and subject to pre-emption three months or over." This contemplated that before the land was surveyed, and at a time when unsurveyed lands were subject to preemption, the land may have been taken up as a pre-emption claim, in which event the pre-emptioner was allowed three months after the approved plat was returned to the register within which to file his declaratory statement. All these provisions would seem to establish beyond doubt that under the act of 1868 there could be no valid application to purchase land included in a sixteenth section until after the approved plat was returned to the register. I therefore concur in the judgment.

We concur: McKinstry, J.; Niles, J.