[Civil No. 761.   Filed March 19, 1902.]

[68 Pac. 547.]

FRANK H. HEREFORD, Administrator of the Estate of Joseph D. Andrews, Deceased, Defendant and Plaintiff in Error, v. GEORGE PUSCH, Plaintiff and Defendant in Error.

1. TROVER AND CONVERSION — PLEADING—EVIDENCE—VARIANCE—PUBLIC LANDS—FENCES ON—FIXTURES.—In an action for the conversion of firewood, a complaint alleging its ownership by plaintiff, its conversion and sale by defendant, and his refusal on demand to pay therefor is not supported by evidence that plaintiff built a wood and brush fence upon public lands to none of which he had title; that, by mistake of fact, he built part of the fence upon ground other than he had intended; that shortly thereafter defendant took up the adjoining tract of land on which said fence stood and claimed that part of the fence which stood thereon; that thereafter plaintiff discovered his mistake, and built a wire fence ninety feet south of the fence in controversy, and that thereupon defendant detached said fence and sold the wood composing the same;

that plaintiff demanded the wood, which defendant refused to surrender but claims as his own.

2. SAME — DEMAND — PLEADING — PROOF—VARIANCE.—Where the complaint alleges the conversion and sale of property and a demand for payment for the same, evidence that plaintiff demanded the property which defendant refused and claimed the material as his own, is incompetent and immaterial and fails to support the pleading.

3. FIXTURES—TROVER AND CONVERSION—PUBLIC LANDS—FENCE ON.— A fence placed on government land by mistake passes with the land to a subsequent purchaser from the government, and the original owner thereof cannot maintain an action against the purchaser for conversion in removing and selling the fence, as the doctrine of trade fixtures and right of removal thereof does not apply.

ERROR to the District Court of the Second Judicial District in and for the County of Graham. George R. Davis, Judge. Reversed.

The facts are stated in the opinion.

Hereford & Hazzard, for Plaintiff in Error.

The fence from the time of its construction was a part of the realty, and as such passed to the defendant Andrews, under the patent from the United States. *Seymour* v. *Watson,* 5 Blackf. 555, 36 Am. Dec. 556; *Binkley* v. *Forkner,* 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33; *Hacker* v. *Monroe,* 176 Ill. 384, 52 N. E. 12; *Wentz* v. *Fincher,* 12 Ired. 297, 55 Am. Dec. 416; *Kimball* v. *Adams,* 52 Wis. 554, 9 N. W. 170; *Mitchell* v. *Billingsley,* 17 Ala. 391; *Graham* v. *Roark,* 23 Ark. 19; *Merritt* v. *Judd,* 14 Cal. 59; *Blair* v. *Worley,* 1 Scam. (2 Ill.) 178; *Burlerson* v. *Teeple,* 2 Greene, (Iowa) 542; *Climer* v. *Wallace,* 28 Mo. 556, 75 Am. Dec. 135; *Treadway* v. *Sharon,* 7 Nev. 37.

"The fact that the person attaching the articles or structures acts in good faith under a mistake as to the title to the land or his rights therein gives him no rights in the article annexed." *Hamilton* v. *Huntley,* 78 Ind. 523, 41 Am. Rep. 593; *Stillman* v. *Hamer,* 7 How. (Miss.) 421; *Huebschmann* v. *McHenry,* 29 Wis. 655; *Honzik* v. *Delaglise,* 65 Wis. 501, 56 Am. Rep. 634, 27 N. W. 171.

"One who purchases land from the United States becomes

the owner of personal property affixed to the land by a third person while the land was a part of the public domain.'' *McKiernan* v. *Hesse,* 51 Cal. 594.

A fence built upon the public domain, with posts set in the ground, becomes a part of the realty, and passes to a purchaser from the United States. *Pennybecker* v. *McDougal,* 48 Cal. 160.

And an act of the legislature authorizing the removal of such improvements as against the grantee of the United States is void. *Collins* v. *Bartlett,* 44 Cal. 371.

John B. Wright, for Defendant in Error.

DOAN, J.—In the year 1888 or 1889, George Pusch, the plaintiff in the lower court and the appellee herein, cut posts four or five inches in diameter from palo verde trees on government lands in Pima County and removed them to what he supposed was the northeast quarter of section 36, township 13 south, range 13 east, a school section in that county, and built out of the said posts and of brush gathered by him and his employees a fence which he constructed by setting the said posts one or two feet in the ground in such a way that the brush could be piled between them, thereby making a continuous fence inclosing a tract of land one half of a mile in length and one quarter of a mile in width, which he used as a pasture for his cattle in connection with his butcher business; he having built a slaughter-house on the tract of land thus inclosed, which he was then, and has been until the present time, conducting in connection with a butcher-shop in the city of Tucson. He had no title to any of the land upon which the fence and buildings were built at the time of placing them there, nor, until some time in the year 1897, when he leased from the supervisors of the county that part of the land in question embraced within the north half of the northeast quarter of section 36, and has since that time occupied that land under such lease. On the fourteenth day of November, 1889, Joseph D. Andrews made a homestead entry upon the southeast quarter of section 25, township 13 south, range 13 east, the land adjoining and lying immediately north of the northeast quarter of section 36, and on the nineteenth day of June, 1895, received from the government a deed to the said lands, which he duly recorded in the public records of

Pima County. Two several surveys made by the government surveyors, George J. Roskruge in 1889, and Philip Contzen in 1895, for the purpose of determining the boundary-line of Andrews' property, located the section line between the said sections 36 and 25 about ninety feet south of the north line of the fence that had been erected by the plaintiff Pusch, inclosing the tract of land first above referred to, and established the fact that the north line of the fence erected by Pusch and about ninety feet of the north end of the eastern and western lines were upon the southeast quarter of section 25, belonging to Andrews, instead of being upon the northeast quarter of section 36, as was intended by Pusch when the fence was built. Some time in the month of November, 1897, the plaintiff constructed a new fence, composed of posts and barb wire, on the line between sections 36 and 25, being about ninety feet south of the north line of the old fence. When the new fence was built and Andrews began to remove the old fence, the plaintiff claimed the wood of which the old fence was built, and demanded it of Andrews, who refused to give it to him, claiming it as his own property. Andrews afterwards tore down and removed the old fence, and sold the wood of which it had been constructed. The value of the wood on the ground where the fence was built was $297. There had been several surveys of the line between the said sections 36 and 25. The plaintiff, when he built the fence, supposed he was building it upon the section-line. He was not familiar with the subsequent surveys, and was not satisfied, until he began the construction of the new fence, that the old fence was not upon the line dividing the two sections. On January 27, 1898, the plaintiff brought suit against the defendant Andrews in a justice's court, upon the following complaint (after the heading): "(1) Plaintiff alleges that said parties reside in said county; (2) That heretofore, and on the 1st day of November, 1897, plaintiff was the owner of ninety-nine cords of firewood, the same being of the value of $297; that the said wood was in the possession of said defendant in said county; that said defendant, on or about the 14th day of January, 1898, sold said wood to divers persons, and delivered same to the purchasers thereof; (3) That afterwards, and on the said day, plaintiff demanded of and from the said defendant the pay for said wood, but the defendant

refused to pay therefor, or for any thereof; wherefore plaintiff demands judgment for the sum of $297, and for costs of suit." The defendant entered a general denial. In aid of this suit, an attachment was issued upon an affidavit executed and filed by the plaintiff, stating that the defendant was "indebted to the plaintiff in the amount sued for upon an implied contract for the direct payment of money for ninety-nine cords of wood, the property of the plaintiff, and being in the possession of the defendant temporarily was sold by the defendant, and the value thereof retained by him." Recovery was had against the defendant, who appealed to the district court. Before the trial in the district court, Joseph D. Andrews died, and Frank H. Hereford, administrator of the estate, was substituted as defendant. The administrator filed an amended answer, setting up the statute of limitations, in addition to the general denial. On trial of the cause before the court without a jury, the court found "that the property in controversy was personal property, and was the property of the plaintiff; that while it was the property of the plaintiff, the defendant, without right, took it into his possession and converted it,—that is to say, the said Joseph D. Andrews, before the bringing of this suit, without right, took said property into his possession and converted it; that at the time of its said conversion the value of the said property was the sum of $297,"—and gave judgment for plaintiff for that amount against the administrator of the estate and the sureties on the appeal bond. From which judgment, and the denial of a motion for a new trial, the defendant appeals.

There is no controversy as to the evidence on any question of fact in the case, the evidence given on either side being perfectly consistent with that given on the other, and either side admitting the truth of all the evidence offered by the other. The determination of the case depends entirely upon the correctness of the deductions of law on the part of the lower court from the undisputed facts in the case. The appellant's brief contains nine different assignments of error, but these are properly divisible into five heads: 1. That the court erred in finding that the property in controversy was the personal property of the plaintiff, whereas, in fact, it was real property, by reason of its having been a permanent fixture attached to the realty, and was therefore conveyed to the

defendant by the deed from the government in 1895, that conveyed the land whereon it stood; 2. That the court erred in finding that the defendant wrongfully took and converted the wood, for the reason that such wrongful taking and conversion were not alleged in the complaint; 3. That the court erred in rendering judgment for the plaintiff, for the reason that the complaint does not state facts sufficient to constitute a cause of action, and was therefore insufficient to authorize a judgment for the plaintiff; 4. That the court erred in rendering judgment for the plaintiff, for the reason that the evidence showed no demand by the plaintiff for the payment for the wood, as alleged in the complaint; and 5. That the court erred in not rendering judgment for the defendant on his plea of the statute of limitations, the wood having been in his possession for more than two years before the alleged conversion.

An examination of the record reveals the utter absence of any evidence to support the allegations of the complaint. There was no allegation in the complaint of any fence, but the suit was brought for ninety-nine cords of wood. When the plaintiff presented his evidence, he established, as a fact beyond controversy, that he built a fence upon public government lands, to none of which he had title; that by mistake of fact he built the part of the fence now in controversy upon another tract than the one he intended; and that shortly thereafter the defendant took up the adjoining tract of land on which said fence stood and claimed the part of the fence that was on his (defendant's) land. Some six years thereafter the defendant obtained title from the government to the land on which stood the fence in controversy. The plaintiff testified that some time in November, 1897, he began building a new fence on the correct line, and that at that time the old fence was standing, as it had been for eight or nine years, on the land of the defendant, about ninety feet distant from the line. There is no evidence to support the allegation in the complaint that he was the owner of ninety-nine cords, or any number of cords, of firewood on November 1, 1897, but on the contrary, his direct evidence that on November 1st he was claiming to be the owner of a fence, then in use as a fence on the defendant's land, which he afterwards, during November, and while it was yet a fence attached to the realty by

the posts set in the ground, separated from the tract of land of which he was in possession by a new fence which he himself built ninety feet south of it. He alleges, in his complaint, that on the fourteenth day of January, after the defendant had sold the material of which the said fence had been composed, he demanded the pay for it, which the defendant refused. He fails to support that allegation by any evidence, but he testifies, without any pleading to authorize or render material or competent such evidence, that in November, 1897, after he had built the new fence, at the time when Andrews began to remove the old fence, he (plaintiff) claimed the wood comprising the said fence, and demanded it of the defendant, which demand the defendant refused, and claimed the material as his own property.

We will first consider the character of the property. The position relied upon by the appellee, that the fence was personal property and the plaintiff should be allowed to remove it because of the liberal construction given to the law of fixtures in the consideration of trade fixtures, is untenable, because of the fact that a pasture fence is not, and has never in any instance been considered, a trade fixture, and because of the further fact that the liberal construction placed by the courts upon the law relative to trade fixtures has been nearly invariably adopted in cases arising between the landlord and tenant, while no such relation can be said to exist in this case. This subject was very exhaustively considered, and very ably presented, by Justice Cowan in the case of *Walker* v. *Sherman,* 20 Wend. 636, and has been very generally followed from that time to the present. The court there held: "The question is one between tenants in common, the owners of the fee, and is, we think, to be decided on the same principle as if it had arisen between grantor and grantee. . . . As between such parties, the doctrine of fixtures making a part of the freehold, and passing with it, is more extensively applied than between any others. As between the tenant for life or years and reversioner or remainderman, all erections by the former for the purpose of trade or manufactures, though fixed to the freehold, are considered as his personal property, and as such may be removed by him during his term, or be made available to his creditors, . . . whereas they are carried, by a devise or other conveyance of the land, to

the devisee or vendee. . . . The general rule is that anything of a personal nature cannot be considered as an incident to the land, even as between vendor and vendee. . . . This is not universally so. Our ordinary farm fences or rails, and even stone walls, are affixed to the premises in no other sense than by the power of gravitation. It is the same with many other erections of the lighter kind about the farm.'' The relaxation of the ancient doctrine respecting fixtures that has obtained in favor of tenants and against landlords, and the distinction between the relation of vendor and vendee on one hand and tenant and landlord on the other, is considered at length in this decision, and is distinctly recognized, and the inconsistency that appears to arise in the American decisions is largely attributed to the courts not attending to the dis-· tinction maintained by the older cases between the two relations of vendor and vendee and tenant and landlord. The rulings of our courts in recent years, to the effect that the intention of the parties very largely controls the question whether personal property loses its character of personal property and becomes realty by reason of being affixed to the freehold for the purpose of trade or manufacture, will be found, on examination, to apply only as between the parties themselves, where no innocent purchaser has come into consideration in the case. That doctrine is correctly set forth in *Treadway* v. *Sharon,* 7 Nev. 37, in which case it is held that trade fixtures do become part of the realty, whatever intention to the contrary on the part of the tenants erecting them may be inferred, but the law indulges the tenant with the right of removing them during his term, as between the tenant and landlord, but they pass by a grant of the land as a part of the realty, and when placed on public land by one in possession without title the one who thus places them there has no greater right to the fixtures as against one whom he suffers to acquire title to the land than has the vendor of land as against his vendee. It has been held by the courts, without exception, that not only as between vendor and vendee the fences pass by grant of the land, but that a fence placed on government land by mistake passes with the land to a subsequent purchaser from the government. *Seymour* v. *Watson,* 36 Am. Dec. 556; *Merritt* v. *Judd,* 14 Cal. 59; *Johnson's Exr.* v. *Wiseman's Exr.,* 4 Met. (Ky.) 360, 83 Am.

Dec. 475; *Rowand* v. *Anderson,* 33 Kan. 264,. 6 Pac. 255, 52 Am. Rep. 529; *Railroad Co.* v. *Morgan,* 42 Kan. 23, 21 Pac. 809, 4 L. R. A. 284, 16 Am. St. Rep. 471. And it has been held in California that a statute allowing those who put improvements on public lands of the United States to remove the same within six months after the land has become the private property of any person, and declaring fences to be improvements within the meaning of said act, in so far as it relates to improvements which as fixtures have become part of the realty, is void. *Collins* v. *Bartlett,* 44 Cal. 371; *Pennybecker* v. *McDougal,* 48 Cal. 160; *McKiernan* v. *Hesse,* 51 Cal. 594.

It is established by undisputed evidence that on November 1, 1897, the only time that the ownership of the property is alleged to have been in the plaintiff, the fence was attached to the realty, and therefore a part thereof. This determines the character of the property and the ownership of it on that date, and renders immaterial the fact that the owner of the land afterwards severed it from the realty and reduced it to personal property.

The posts, that represent the wood sued for, when they were set in the ground in the construction of the fence, lost their identity in the fence, and the fence became a fixture when thus attached to the land in 1889, and passed as a part of the realty to the defendant under the deed from the government in 1895, that conveyed the land to which it was attached, and the court erred in finding it to be the personal property of the plaintiff. It follows that the fence, being a part of the realty, and the property of the defendant, conveyed to him by the deed from the government that conveyed the land whereon it stood, the defendant was entitled to judgment for his costs in the lower court, and the court erred in giving judgment for the plaintiff against the defendant, for the material of which the fence was constructed as personal property. This renders unnecessary the consideration of the other errors assigned in the brief. The judgment of the lower court is reversed, and the cause remanded, with direction to the lower court to render judgment for the defendant for his costs in the case.

Street, C. J., and Sloan, J., concur.