[S. F. No. 22. Department Two.—May 27, 1896.]

# E. M. GALVIN ET AL., RESPONDENTS, *v.* E. H. PALMER, APPELLANT.

ACTION TO ENFORCE TRUST—VERDICT OF JURY ADVISORY—DIRECTION OF VERDICT.—An action to enforce a trust being a case in equity, a verdict of the jury is merely advisory to the court, and it is not error for the court to direct a verdict for the defendant in such a case, even though the evidence may be conflicting.

MILITARY RESERVATION—TITLE OF SAN FRANCISCO—ACT OF CONGRESS OF 1870—DEED OF COMMISSIONERS OF FUNDED DEBT.—The title of the city of San Francisco to lands included in the military reservation was not originally in the city, but upon the conquest of California vested in the United States, and such lands were reserved from acquisition by private individuals by a valid executive act, and the portion of them acquired by the city were, by act of Congress of 1870, granted to the city in trust for persons who were then in actual possession of them, by themselves or their tenants, or who had been deprived thereof by the military authorities, or by intruders or trespassers, and a conveyance from the commissioners of the funded debt in 1852 passed no title to such lands to their grantee.

ID.—DEED FROM CITY UNDER ACT OF 1870—FRAUD—STATUTE OF LIMITATIONS—RIGHTS OF MINORS.—Where a deed was executed by the city to one who claimed to be in *bona fide* possession of presidio lands under the act of 1870, any fraud practiced upon the city in the obtaining of the deed having been committed in 1870, the grantors of plaintiffs were chargeable with knowledge of such fraud, and the cause of action, being barred as to them, is barred as to minors claiming under them.

ID.—PRESUMPTIONS ATTENDING DEED—PERFORMANCE OF OFFICIAL DUTY—COLLATERAL ATTACK BY STRANGER.—A deed from the city under and pursuant to the act of Congress of 1870, like a patent, is *prima facie* evidence that the officers performed their duty in issuing it, and that it was issued to the rightful claimants, and these presumptions can be attacked only by one who connects himself with the title, and cannot be attacked by a stranger or one in hostility to the title, but, as against him, the presumptions are conclusive.

ID.—EVIDENCE—PART OF OFFICIAL MAP OF MILITARY RESERVATION—AUTHENTICATION BY LEGAL CUSTODIAN—PRIMA FACIE EVIDENCE.—That portion of the official map of the military reservation which includes the lands in controversy and the boundaries of the reservation, is admissible for the purpose of showing that such lands are included within the boundaries, nor is it necessary to introduce the whole map in evidence; and the map is sufficiently authenticated by the certificate of the legal custodian thereof, reciting the facts showing that he is such custodian, and his certificate is *prima facie* evidence of his official character and right to the custody of the map, and of his authority to make such certificate.

ID.—HARMLESS RULING—FACT PROVED BY OTHER EVIDENCE—ADMISSION OF PLEADING.—The ruling of the court in admitting the map in evidence,

if erroneous, could not be prejudicial to the plaintiffs, where there was sufficient independent and uncontradicted evidence to show the location of the land, and the deed of the city to the defendant which was introduced in evidence by plaintiffs showed the land to be within the reservation, and plaintiffs had pleaded in their complaint that the land was granted by the United States to the city in trust, and had failed to connect themselves with the government title.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial should not be granted for newly discovered evidence which is cumulative, or which might have been procured at the trial by reasonable diligence, and of which the moving party must have been fully advised as to its materiality and bearing upon the case.

APPEAL from an order of the Superior Court of the City and County of San Francisco.   JOHN HUNT, Judge.

The facts are stated in the opinion of the court.

*Thomas C. Huxley,* for Appellant.

Upon the conquest of California the fee of all lands on the San Francisco peninsula which had not passed into private ownership vested in the government of the United States.   (*United Land Assn.* v. *Knight,* 85 Cal. 470; *Baker* v. *Brickell,* 87 Cal. 334; *People* v. *Holladay,* 68 Cal. 443; *Thompson* v. *Doaksum;* 68 Cal. 596.)   Hence, any title acquired by San Francisco to the land in suit must be derived from the United States, and is subject to any conditions imposed upon its acquisition.   (*Grisar* v. *McDowell,* 6 Wall. 364; *Palmer* v. *Low,* 98 U. S. 16; *Trenouth* v. *San Francisco,* 100 U. S. 253.)   The reservation was a valid act of the executive authority. (*Grisar* v. *McDowell, supra.*)   The act of Congress of July 1, 1870, treated the reservation as part of the public domain; and the city and county, by accepting the trusts created by that act, accepted the act.   (*Hearst* v. *Pujol,* 44 Cal. 230; *Board of Education* v. *Fowler,* 19 Cal. 25.)   The relinquishment by the United States by that act did not feed any prior claim of the city, and the only valid title of the city is that derived from the United States by that act, and the alleged deed from the commissioners of the funded debt is therefore withdrawn.   (*Naglee* v. *Palmer,* 50 Cal. 643; *LeRoy v. Cun-*

*ningham*, 44 Cal. 600; *Palmer* v. *Galvin*, 72 Cal. 184.)
The city deed to the defendant is, like a patent, *prima
facie* evidence in all cases, and, as against a stranger to
the true title, conclusive evidence of the validity of the
title of the grants thereunder to the lands described.
(*Low* v. *Lewis*, 46 Cal. 552; *McCreery* v. *Sawyer*, 52 Cal.
261; *Latham* v. *Los Angeles*, 87 Cal. 518.) A stranger
to the title cannot show that the grantee named in the
city deed was not the beneficiary intended by the act
of Congress. (*Leroy* v. *Cunningham*, *supra; Low* v.
*Lewis*, *supra; Naglee* v. *Palmer*, *supra; McCreery* v. *Saw-
yer*, *supra; Palmer* v. *Galvin*, *supra.*) Nor can he attack
the deed on the ground that it was procured by fraud.
(*Leroy* v. *Cunningham*, *supra; Chapman* v. *Quinn*, 56
Cal. 278; *Kentfield* v. *Hayes*, 57 Cal. 410; *Turner* v.
*Donnelly*, 70 Cal. 604; *Peabody* v. *Prince*, 78 Cal. 515;
*Newman* v. *San Francisco*, 92 Cal. 381.) Plaintiffs'
grantor never had more than constructive possession,
which will not satisfy the requirement for actual pos-
session. (*LeRoy* v. *Cunningham*, *supra; Davis* v. *Perley*,
30 Cal. 639; *Judson* v. *Malloy*, 40 Cal. 309; *Wolf* v.
*Baldwin*, 19 Cal. 313; *Brumagim* v. *Bradshaw*, 39 Cal.
44; *Davis* v. *Perley*, 30 Cal. 643; *Davis* v. *Spring Valley
Water Works*, 57 Cal. 545.) An occupancy which ter-
minated before the passage of the act would not be a
*bona fide* occupancy at the time of the act of 1870.
(*Labish* v. *Hardy*, 77 Cal. 329; *Baker* v. *Brickell*, *supra;
LeRoy* v. *Cunningham*, *supra.*) The map was ad-
missible in evidence. (Code Civ. Proc., secs. 1918, subd.
9, 1923.) Any possible error in admitting it could not
be prejudicial, because there was other proof that the lot
was within the boundaries of the reservation, and the
official deed was *prima facie* evidence that the land con-
veyed was part of the tract relinquished by Congress,
(*Collins* v. *Bartlett*, 44 Cal. 383.) Plaintiffs alleged that
the United States granted the lands to San Francisco.
which is an admitted fact in the case, and the city deed
to defendant was introduced as part of their case.
(*Heinlen* v. *Heilbron*, 97 Cal. 105.)

*Moses G. Cobb*, for Respondents.

The court erred in admitting in evidence a part of the copy of the map of the Point Jose reservation, there being no law empowering Colonel Stewart to certify a copy of the map, and the legal custodian of a map can only certify to a copy of the whole map. The only officer who could certify a map of any government survey is the surveyor general. (U. S. Stats., secs. 2207, 2215, 2223, 2224; *Hastings* v. *Devlin*, 40 Cal. 358.) Plaintiffs' grantors had possession of the land by tenant until July 7, 1870, and that was sufficient actual possession to satisfy the act of 1870. (*Fleming* v. *Maddox*, 30 Iowa, 240; *Langworthy* v. *Myers*, 4 Iowa, 18, 27; *Neubrandt* v. *State*, 53 Wis. 89.)

HENSHAW, J.—Appeal from the order granting a new trial. Plaintiffs, who at the date of the commencement of this action were minors, averred their ownership and possession of a piece of land situated at the corner of Beach and Hyde streets, in the city and county of San Francisco. They further averred that defendant asserted title to the land; that this title was based upon a deed obtained by defendant's grantor from the city and county of San Francisco by fraud. After the United States had granted the land to the city and county of San Francisco, upon trust to convey to those in *bona fide* possession at the date of the passage of said act (July 1, 1870), defendant's grantor falsely and fraudulently represented himself to hold such possession of said land, and thereby procured a deed to the same from the city. At the date of the passage of the act, defendant's grantor was not, but plaintiffs' grantors were, in such actual possession, all of which was well known to the defendant at the time he took his deed. The prayer was for a decree declaring defendant to hold his title in trust for plaintiffs and compelling him to convey the same to them.

For answer the defendant made denial, pleaded the

statute of limitations, and by cross-complaint set up his title and asked a decree establishing it as good and valid. Though the action was in equity, the court impaneled a jury, whose verdict, being advisory merely, it was in nowise bound to accept. At the conclusion of the evidence the jury was instructed to render a verdict for defendant, which it did, and judgment was entered in accordance therewith.

Thereafter plaintiffs moved for and obtained a new trial, from the order granting which this appeal is taken. The grounds urged for the new trial were newly discovered evidence, insufficiency of the evidence to justify the verdict, and errors of law occurring at the trial. The court in granting the motion based its order upon the single ground that it had erred to the prejudice of plaintiffs by admitting in evidence a portion of a map—which ruling will hereafter come under review.

This order of the court relieves from consideration the question of the sufficiency or insufficiency of the evidence. (*Kauffman* v. *Maier,* 94 Cal. 277.) While it is true that in actions at law, where a trial by jury is a matter of right to either party, it is error for the court to instruct the jury to render its verdict for one or the other when the evidence is conflicting—the rule does not obtain where in equity a jury is impaneled merely as a body advisory to the court to assist it in determining disputed facts. In such cases the court may even, under conflicting evidence, reject the verdicts general or special of the jury, and enter a decree in accordance with its own determination, or, what is an equivalent, it may direct a particular verdict upon the facts as being in accord with its own conclusions. There was no error therefore in the court's instruction, even if it be conceded that the evidence was conflicting.

But in truth the evidence was not conflicting; or, even if by a most liberal concession a conflict be acknowledged, it was upon matters which by reason of other considerations could not have advantaged the plaintiffs if the disputed points had been determined

in their favor. To make this apparent a review of the facts here becomes necessary.

In 1850 the President of the United States by proclamation reserved for public purposes certain lands upon the peninsula of San Francisco at Point Jose or Point San Jose, now commonly designated Black Point. By later proclamation in 1851 the boundaries of this reservation were reduced and made to embrace the following tract: "The promontory of Point Jose within boundaries of not less than eight hundred yards from its northern extremity." By all the evidence in the case uncontradicted it appears that the lot in question was within the boundaries both of the original and of the reduced reservation.

By act of Congress of 1870 (16 U. S. Stats. at Large, c. 197, sec. 16), in which the United States relinquished certain of these reserved lands to the city and county of San Francisco, one of the trusts declared was "to grant and convey the remainder of said land to the parties severally, who are, at the date of the passage of this act, in the actual *bona fide* possession thereof, by themselves or their tenants, and in such parcels as the same are so held and possessed by them; or who, if they have not such possession, were deprived thereof by the United States military authorities when they went into the occupancy of said military reservation, or were deprived thereof by intruders or trespassers, against whom possession may be recovered by legal process."

Defendant's predecessor in interest made proof of his right to a deed to the land in question under this act, and through this source title vested in defendant by deed of the city December 24, 1870.

Plaintiffs introduced a deed of the land from the commissioners of the funded debt to J. W. Bowman, acknowledged in November, 1852; a deed of an undivided one-half thereof from Bowman to S. Hopkins, acknowledged in January, 1853; a deed from Bowman to plaintiffs of his remaining interest, acknowledged in July,

1881, and a deed from Hopkins to plaintiffs of his interest, acknowledged in April, 1880.

Their title from this source depends for its validity upon the soundness of the claim which they urge, that the land originally belonged to the city of San Francisco. This claim, however, is untenable. Upon the conquest of California title to the lands of the pueblo which had not passed into private ownership vested in the United States. (*Grisar* v. *McDowell*, 6.Wall. 364; *Trenouth* v. *San Francisco*, 100 U. S. 253; *United etc. Assn.* v. *Knight*, 85 Cal. 470; *Thompson* v. *Doaksum*, 68 Cal. 596; *People* v. *Holladay*, 68 Cal. 443.) It is not claimed that these lands were held in private ownership prior to the commissioners' deed. And, as it has been decided that the reservation of the presidio was a valid executive act which excluded these lands from acquisition by private individuals (*Grisar* v. *McDowell*, *supra*), it follows, necessarily, that the commissioners' deed was ineffectual and worthless as a conveyance of title.

Plaintiffs next sought to establish a title by adverse possession; but, as they were unable to prove payment of taxes for the requisite number of years, their claim failed so completely and admittedly that it is not even argued in their briefs.

Plaintiffs' final effort was directed to showing that defendant's predecessor was not in the *bona fide* possession of the land at the date of the act of relinquishment, and that defendant's deed was, consequently, procured by fraud. But neither of the plaintiffs who are minors was born at the date of the passage of this act. They themselves cannot claim, therefore, as beneficiaries under the act. They must rely, as was admitted, upon the strength of their grantors' rights. In this regard, then, they occupy the same and no better position than would these grantors. As to them, the fraud, if fraud there be, was committed in 1870. They were chargeable with knowledge of it, since not only were the proceedings public, but they culminated in a recorded

deed to the property which they claimed.    This cause of action then was long barred as to the grantors of plaintiffs, and, consequently, to plaintiffs themselves.    (*Love* v. *Watkins,* 40 Cal. 561; 6 Am. Rep. 624; *Croghan* v. *Spence,* 71 Cal. 125: *Hecht* v. *Slaney,* 72 Cal. 366; *Ohm* v. *San Francisco,* 92 Cal. 445.)

Moreover, the deed to defendant, like a patent, is *prima facie* evidence that the officers performed their duty in issuing it, and so, that it was issued to the rightful claimants.    These presumptions can be attacked only by him who connects himself with the title, and not by a stranger, or one in hostility to it.    (*Low* v. *Lewis,* 46 Cal. 549; *McCreery* v. *Sawyer,* 52 Cal. 257; *Latham* v. *Los Angeles,* 87 Cal. 514; *Payne* v. *Treadwell,* 16 Cal. 220; *Doll* v. *Meador,* 16 Cal. 295; *Churchill* v. *Anderson,* 56 Cal. 55; *O'Connor* v. *Frasher,* 56 Cal. 499; *LeRoy* v. *Cunningham,* 44 Cal. 599; *Naglee* v. *Palmer,* 50 Cal. 641; *Palmer* v. *Galvin,* 72 Cal. 183; *Chapman* v. *Quinn,* 56 Cal. 266; *Peabody* v. *Prince,* 78 Cal. 511.)

It was incumbent on plaintiffs, therefore, first to prove that they or their grantors were in the actual *bona fide* possession at the date when the act went into operation, and this, as the court says and the evidence shows, they signally failed to do.    The utmost which their evidence can be claimed to establish is that no one held such possession; but such a showing leaves plaintiffs strangers to the title, and against them on this ground the deed of the city to defendant becomes conclusive, since they cannot be permitted to attack it.

In proof that the land was within the limits of the military reservation there was admitted in evidence over plaintiffs' objection a portion of a map of the reservation showing the location of the land with relation to the boundary of the government tract.    The judge granted the motion for a new trial upon the sole ground that he believed he had committed error in admitting this evidence, and, as it was evidence which greatly influenced him in his determination that the

land was a part of the Presidio reservation, he deemed the ruling to be prejudicial to the interests of plaintiffs.

We think the learned judge, in his conscientious efforts to avoid injustice, here, and not upon the trial, fell into error.

The drawing, which was a portion of a map, was offered with the following certificate:

"I, Charles S. Stewart, colonel of the United States corps of engineers, do hereby certify that I am the legal custodian of a map of the Point San Jose U. S. military reservation, as located within boundaries of not less than eight hundred yards from said point, and that said map was prepared by and is part of the records of the United States War Department, and that this map is a true and correct copy of so much of the original map in my custody as embraces the tract of land located in the city and county of San Francisco, within the former boundaries of said reservation, and bounded northerly by high water mark of the bay of San Francisco, easterly by the former eastern boundary of said reservation as originally located, southerly by North Point street, and westerly by Larkin street.

"In witness whereof, I have hereunto set my hand and private seal (having no official seal) this sixteenth day of April, 1883.

"[SEAL]    C. SEAFORTH STEWART,

"Col. of Engineers, U. S. A."

This certification is in strict accord with the provisions of sections 1918, subdivision 9, and 1923 of the Code of Civil Procedure.

The objections made by plaintiffs to the introduction were two: 1. That the whole map should be introduced, and not a part; and 2. That there is no law making Colonel Stewart a certifying officer of a copy of the map.

As to the first of these objections it is sufficient to say that section 1923 of the Code of Civil Procedure contemplates and provides for the introduction in evidence of a part of a map or document. The object of the

evidence was to establish that the land in question was within the boundaries which the United States government had set to the reservation, and that portion of the map was offered which showed the land and the inclosing boundary. The whole map would have showed no more, or, if it would, it became the duty of plaintiffs' attorney, who had himself, under direction of the court, inspected the original instrument, to point out the precise particular in which the offered portion worked an injury by its incompleteness, or failed fully to express the truth of the matter sought to be proved. He did not do this. If the whole map would have shed no more light upon the question, the offered portion was material and admissible, and the remainder immaterial and unnecessary.

The second ground of objection, which was that "there is no law making Colonel Stewart a certifying officer of a copy of the map," is no better founded than was the first. The objection is tantamount to an admission that the map is a record of the war department, and that Colonel Stewart is the legal custodian thereof, as he well might be under the customs, rules, or orders of the department. The certificate also recites these facts. Assuming them as true, the law authorizing him to make the certificate is found in section 1918, subdivision 9, of the Code of Civil Procedure. Moreover, the official character of the officer as the legal custodian of the document, and therefore authorized to certify a copy of it, is proved *prima facie* by the certificate itself. (*Mott* v. *Smith*, 16 Cal. 533, 552.) And finally an error in admitting the map could not have been prejudicial to plaintiffs, because: 1. There was sufficient independent and uncontradicted evidence to show the location of the land; 2. By presumption, the deed from the city to defendant, which deed plaintiffs introduced in evidence as part of their case, showed the land to be within the reservation (*Collins* v. *Bartlett*, 44 Cal. 383); 3. Plaintiffs pleaded that the land was granted by the United States to the city and county of San

Francisco in trust, and failed to connect themselves with this government title.

As to the alleged newly discovered evidence, it was either cumulative upon the proposition that no one was in the actual *bona fide* possession of the land at the time the act of Congress became operative, or it sought to show that though the land was taken by the United States authorities, and was within the boundaries which they laid out, still these boundaries were incorrect. Even if this latter evidence were admissible, no diligence is shown and no reason why it was not procured upon the trial. At the same time it clearly appears by counter-affidavits that plaintiffs' guardian, by reason of former litigation between the parties over the same land, must have been fully advised as to its materiality and bearing upon the present case.

The order is reversed and the cause remanded, with directions to the trial court to deny the motion for a new trial.

McFARLAND, J., concurred.

TEMPLE, J., concurred in the judgment.

Hearing in Bank denied.