[Civ. No. 208.   Third Appellate District.—September 26, 1906.]

## VINCENT R. OSTROM et al., Appellants, v. N. E. DE YOE et al., Respondents.

EQUITY CASE—SPECIAL VERDICT ADVISORY—FINDINGS.—In an equity case, the special verdict of the jury is merely advisory, and the court has a right to disregard it, which it does by saying: "And the court, being fully advised in the premises, does not approve of said verdict, but now makes and files its findings of fact and conclusions of law."

ID.—IMMATERIAL FINDING—DELIVERY OF DEEDS—TITLE OF WIDOW— COMMUNITY PROPERTY — DISTRIBUTION UNDER WILL.—A finding against evidence that deeds from a husband to his wife were delivered before his death, and passed title to her, is immaterial where the widow was entitled to one-half of the community property after the husband's death, and obtained title to the other half as residuary devisee and distributee under the will of her deceased husband.

ID.—ACTION TO ENFORCE TRUST AGAINST HEIRS OF FORMER WIFE— ALLEGED AGREEMENT WITH HUSBAND TO MAKE WILL—SUPPORT OF FINDINGS.—In an action to enforce a trust against heirs of the former wife, based on her alleged verbal contract to make a will in favor of certain heirs of her former husband, in consideration of his will in her favor, it is held that the findings of the court against the plaintiffs and in favor of the defendants that the will of the deceased husband was not made pursuant to any agreement, and that he did not rely upon any such agreement or promise when he made his will, and that plaintiffs have no interest or claim on the property described in the complaint, but that it belongs to the defendants, are fully sustained by the evidence.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial.   L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

L. J. Maddux, for Appellants.

P. J. Hazen, and Wm. O. Minor, for Respondents.

BUCKLES, J.—This is an action to enforce a trust in certain real and personal property, based on a supposed verbal contract, made by Caroline De Yoe, under whom defendants claim, with Stephen Rogers, her then husband, under whom plaintiffs claim —by which contract appellants claim said Caroline obligated herself to make a will, which is admitted she never made.

The action was tried by the court; certain special issues were submitted to a jury which answered the same adversely to the defendants; the court reserved the action for further consideration, heard further testimony, and when the case was argued and submitted, made and filed its findings and decision, rendering judgment thereon in favor of defendants. The plaintiffs appeal from the judgment and from an order denying a new trial. Stephen Rogers and Caroline Rogers were husband and wife and during their married life had accumulated a large amount of property. In January, 1885, Stephen Rogers made several deeds of gift to his said wife of fifteen hundred and twenty-four and six one-hundredths acres of his land and numerous town lots, and on December 18, 1886, he made another deed of gift to the said wife of three thousand nine hundred and sixty-seven and thirty-four one-hundredths acres, generally known as the Oak Flat. These deeds were found after Stephen Rogers' death in a tin box in which he kept his papers, deposited in the First National Bank of Modesto, and were recorded March 26, 1888, at the request of Ora McHenry. Stephen Rogers died testate March 21, 1888. On December 31, 1886, he made his will. The property described in the said deeds was not described in the will nor returned in the inventory in the probating of said will and settlement of his estate. The will was admitted to probate April 21, 1888, and the said Caroline Rogers appointed executrix. The devises in said will over which this controversy arises are as follows:

"Third: I give and bequeath to my grandson, Stephen Rogers, son of Stimpson P. Rogers and Ella Rogers, the sum of ten thousand ($10,000) dollars, to be paid to him as hereinafter directed, and only after the death of my said wife

Caroline if she survive me; the income from the said ten thousand dollars to be paid to said Stephen Roy Rogers personally for his own private use from the time he be fifteen years old till he be twenty-one years old; and then when he be twenty-one years old, I direct that he be paid five thousand dollars, being half of the above named bequest, and that from the time he is twenty-one till he be twenty-five (25) years old, I direct that the income from the remaining five thousand dollars be paid him annually for his private use. And then, when he the said Stephen Roy Rogers be twenty-five years old, I direct the remaining five thousand dollars paid to him personally, for his own exclusive and private use. If my said grandson die before arriving at the ages herein named, then the remaining or unpaid amounts of said bequest, together with the income thereon, I direct shall be distributed as the other portion of my estate shall be or shall have been distributed, namely, to the brothers and sisters of myself and wife Caroline, share and share alike.

"Fourth: The residue of my estate, both real and personal, of whatever kind, whether money, credits, chattels, lands, houses, or shares in corporations, and wheresoever situated, I give, bequeath, and devise to my beloved wife, Caroline Rogers, if she survive me. And it is my will and I so direct, that my said wife also have the exclusive and absolute control, during her life, of that part of my estate hereinbefore devised to Lizzie Kay and Stephen Roy Rogers.

"Fifth: If I survive my said wife Caroline, then I give, bequeath, and devise all the residue of my estate, both real and personal, and wheresoever situated, share and share alike, to my grandson, the said Stephen Roy Rogers, if he be then living, and to my brothers and sisters, and to the brothers and sisters of my said wife Caroline; or if any of the said brothers and sisters be dead, and their children shall take the share of their parent, respectively, save and except only Gilbert P. Ostrom, son of Jemima Ostrom, and also Clarence Cotton, son of Jacob Cotton, to whom I bequeath nothing; and I will and bequeath, in case I survive their parents, or either of them, the share of my estate hereinbefore given to said Jemima Ostrom and Jacob Cotton, to the remaining brother and sister of said G. P. Ostrom and Clarence Cotton, respectively."

Stephen R. Rogers died May 15, 1899. The court made and entered its decree of distribution of said estate and it was in accordance with said will. The decree contained the following clause—"and the residue of said estate of Stephen Rogers deceased hereinafter particularly described and now remaining in the hands of said executrix, *and any other property* not now known or discovered which may belong to the said estate or in which the said estate may have any interest, be and the same is hereby distributed as follows, to wit": To Lizzie Kay $1,000 if she survive Caroline Rogers. The remainder to Caroline Rogers. No objection is made to the decree. On April 25, 1894, Caroline Rogers married N. E. De Yoe, who is a defendant in this action. She died February 29, 1904. The plaintiffs in their complaint allege as follows: "That prior to and at the time of the making and execution of the said will hereinbefore set forth by the said Stephen Rogers, it was mutually understood and agreed by and between the said Stephen Rogers and the said Caroline De Yoe, then Caroline Rogers, and the said Caroline Rogers promised and agreed to and with the said Stephen Rogers that if the said Stephen Rogers would make and execute the will hereinbefore set forth, that the said Caroline Rogers would make and execute her will and upon her death give and bequeath all of the property owned and possessed by the said Caroline Rogers and Stephen Rogers at the time of his death and all the property possessed by her at her death and all the proceeds of such property, in equal shares, to Stephen Roy Rogers, *if he then be living,* and to the brothers and sisters of the said Stephen Rogers and brothers and sisters of said Caroline Rogers, or if any of the said brothers and sisters be dead, then to their children, said children to take the share of the parent, respectively, save and except Gilbert P. Ostrom and Clarence Cotton; and in case of the death of Stephen Roy Rogers, then to be willed to the brothers and sisters of Steven Rogers and Caroline Rogers and their children, as aforesaid. That pursuant to said agreement, and being induced by said agreement and promise of said Caroline Rogers and relying thereon, said Stephen Rogers made and executed the will and testament hereinbefore fully set forth."

The complaint prays for a specific performance of the alleged agreement and that the said deeds of Stephen Rogers

to Caroline Rogers be set aside. The answer denies that
there ever was such a contract, admits the making and execu-
tion of said deeds, and alleges that such deeds were delivered
to Caroline Rogers and were for good and valid considera-
tions and conveyed all the interest of Stephen Rogers in said
land to Caroline Rogers. After denying fully the allegations
of the complaint the defendants for a separate defense plead
laches on the part of plaintiffs and that they should be es-
topped from asserting and claiming any right to the lands
by reason of allowing the rights of defendants to accrue with-
out any knowledge of plaintiffs' claims. Pleads the statute
of limitations. Also that plaintiffs' alleged claim is based
upon an alleged agreement which is void and cannot be en-
forced because not in writing. Also that said claim cannot
be enforced because an attempt to create a trust to hold real
estate and suspend the power of alienation. Also that if said
agreement was made it is void because made by Caroline
Rogers, a married woman.

This being an equity case, the special verdict of the jury
was but advisory, and the court had a right to disregard
it, which the court did by saying, "and the court being fully
advised in the premises does not approve of said verdict but
now makes and files its findings of fact and conclusions of
law." (*Galvin* v. *Palmer*, 113 Cal. 50, [45 Pac. 172].)

The testimony in the case as to the deeds was as follows: O.
McHenry testified that he had seen the said deeds (Stephen
Rogers to Caroline Rogers) in the First National Bank of Mo-
desto, that they were recorded by him at his father's request
and that his father was the custodian thereof, and that they
were recorded on the dates shown on the deeds, to wit, March
26, 1888. The deeds were introduced in evidence and the
witness Miss Jennie Broughton said that Mrs. Caroline Rog-
ers had "discovered some deeds made by Stephen Rogers
with me; she said she found them in a little brown box—
tin box—I think it was, that she said to me, she says, 'You
know that Stephen always kept his business papers in.' He
had that little box on the ranch, and after he died she found
the deed, she said, when she opened that box. If I remem-
ber right, she said 'the box was in the First National Bank.'
And said 'the first time she saw the deeds was after he died
and she went and opened his box.'" L. B. Walthal testified
that he drew the deeds at the request of Stephen Rogers and

delivered them to him. He also drew the will. J. E. Ward, cashier of the First National Bank of Modesto, testified: "I remember the deeds introduced in evidence being left in the bank, but do not remember the circumstances."

This is all the evidence in relation to the deeds.

The court found as follows: "Each and all of the deeds referred to in said complaint were made, executed and delivered, at the times of their respective dates, for good and sufficient considerations, and were valid conveyances of the property therein described, and conveyed title thereto to said Caroline Rogers as of the dates of said deeds, and she and her successors have been, since the death of Stephen Rogers, the owners in fee simple thereof, claiming title and asserting such ownership against all the world."

The delivery of the deeds before the death of Stephen Rogers is not shown to have taken place. But the finding is immaterial. The deeds not having been delivered, no title to the lands mentioned therein passed under said deeds to Caroline Rogers, and said lands remained a part of said estate and would be and were included in the residue of the estate devised to Caroline Rogers. The making of the deeds furnished sufficient reason for omitting any mention in the will of the lands attempted to be conveyed by said deeds, for the deeds had been drawn and executed prior to making the will. Evidently the testator did not realize when he made his will that these lands were still a part of his estate. However, the decree of distribution herein referred to distributed these lands to Caroline Rogers under that clause "and any other property not now known or discovered which may belong to the said estate or in which the said estate may have any interest."

Irrespective of the will one-half of these lands belonged to the widow at the death of Stephen Rogers because they were community property.

The widow went into possession of all the property devised to her, including these lands, under the decree of distribution in the Stephen Rogers estate, made October 9, 1890, and held the same as her own, farmed and controlled the lands and managed the same, and her holding was open and notorious to all the world from that date until her death in 1904.

The court found there was no contract or agreement between Stephen Rogers and Caroline Rogers, that she did not promise or agree with Stephen Rogers if he would make and execute his said will as he did or for any other consideration, that she would make her will, or upon her death give or bequeath the property or any part thereof, as alleged in said complaint, nor did said Caroline Rogers at any time make any such contract or agreement. That the will of Stephen Rogers was not made pursuant to any agreement such as it alleged in the complaint, and he did not rely upon any such agreement or promise when he made his will.

The only witness who gives any testimony at all concerning the contract or agreement between Stephen Rogers and his wife was that of Miss Broughton, who said Mrs. Rogers would tell her that she was not to make a will, that there was no agreement that she was to make a will, and when finally the court asked this witness: "Did she ever tell you at any time she had agreed or made a contract with Stephen Rogers that she was to do anything with the property upon her death or prior to her death?" she answered: "I don't think so."

There is testimony supporting every material finding the trial court made, and these findings warrant the judgment "that plaintiffs have no right, title, interest or claim in or to any of the property described in the complaint, and that defendants are the owners of and entitled to the whole thereof, freed of any claim of plaintiffs thereto, etc."

Judgment and order affirmed.

Chipman, P. J., and McLaughlin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 26, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 22, 1906.