[S. F. No. 6469. In Bank.—October 11, 1915.]

ANTOINETTE N. BURK et al., Respondents, v. W. F. HOWE et al., Appellants.

FORT MASON MILITARY RESERVATION — BOUNDARIES — GOVERNMENTAL SURVEY.—The boundary of the land in San Francisco, now known as the Fort Mason military reservation, reserved by the proclamation of the President on December 31, 1851, and therein described as "the promontory of Point Jose within boundaries not less than eight hundred yards from its northern extremity," as surveyed and mapped by the United States War Department in 1874, is the circumference of a circle having a radius of eight hundred yards in length, the northern extremity of Point Jose being the center of the circle, and not a square, the sides of which run east and west and north and south, and located so as to be tangent to such circle.

ID.—ACTS REGULATING SURVEY OF PUBLIC LANDS INAPPLICABLE.—The act of Congress of March 3, 1853, and other acts of Congress, and regulations of the surveyor-general providing for surveys of the public lands to be offered for sale to settlers and requiring subdivisions thereof to be made in rectangular form upon east and west and north and south lines, relate exclusively to the public lands of the United States, and have no application to land within the pueblo grant from Mexico to San Francisco.

ID.—PRE-EMPTION CLAIM WITHIN ONE MILE OF RESERVATION.—Section 7 of the act of Congress of 1853, declaring that no pre-emption claim shall be allowed upon land within a military reservation, or within one mile thereof, did not extend the boundary of such reservation to the distance of one mile from its northern extremity.

ID.—GOVERNMENT MAY FIX FORM OF RESERVATION—MAP AS EVIDENCE.— If the description of the reservation contained in the presidential proclamation be indefinite, the United States government had the authority to determine its form and fix its limits, and the map of its survey is competent evidence of the fact.

APPEALS from judgments of the Superior Court of the City and County of San Francisco, and from orders refusing a new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

C. M. Jennings, and Samuel M. Shortridge, for Appellants.

Page, McCutchen, Knight & Olney, McCutchen, Olney & Willard, M. F. Michael, and Lloyd Baldwin, for Respondents.

SHAW, J.—Appeals from the judgment and from the order denying a new trial in each of three separate cases are here presented.   For the purposes of the trial the cases were consolidated.   They are numbered and entitled in the superior court of the city and county of San Francisco as follows: *Burk et al.* v. *Howe et al.*, No. 15,263; *Burk* v. *Howe et al.*, No. 23,685, both involving the east half of the lot in controversy, and *Robins et al.* v. *Howe et al.*, No. 16,430, involving the west half of said lot.   They involve title to fifty vara lot number 428, situate in San Francisco, fronting on the south side of North Point Street and lying between Hyde and Leavenworth Streets.   The facts affecting the title are the same in all the cases and they are submitted on the same argument.

The plaintiffs sued to quiet title to this lot.   The answers of the defendants deny the allegations of the complaints as to ownership in fee by the plaintiffs, and deny the allegation that the defendants claim an interest in the property and that said claim is without right.   The findings sustain the allegations of the complaint.

The plaintiffs established their title to the lot under a grant from John W. Geary, alcalde of San Francisco, dated and duly recorded on December 10, 1849.   This title was confirmed to the holders thereof, so far as the city of San Francisco was concerned, by the Van Ness ordinance of 1855, approved by the state legislature by the act of March 11, 1858.   (Stats. 1858, p. 52.)   It was fed up to the full quality of a fee-simple absolute by the act of Congress of July 1, 1864 (13 U. S. Stats. 333), the act of March 8, 1866 (14 U. S. Stats. 4), and by the decree of the land commission of the United States circuit court confirming the pueblo grant from

the Mexican government to San Francisco. (*Cohas* v. *Raisin,* 3 Cal. 443; *Hart* v. *Burnett,* 15 Cal. 530, 614; *San Francisco* v. *Le Roy,* 138 U. S. 666, [34 L. Ed. 1096, 11 Sup. Ct. Rep. 364]; *Grisar* v. *McDowell,* 73 U. S. (6 Wall.) 363, [18 L. Ed. 863].)

The defendants claim that this judgment and these confirmatory statutes do not operate upon the plaintiffs' title to this land because, as they assert, the lot lies within the limits of the Point Jose military reservation, now known as the Fort Mason reservation. All parcels of land reserved for military, naval or other public uses of the United States were expressly excepted from the operation of the grants to San Francisco by the United States. If, therefore, this land is within the limits of the aforesaid reservation, the plaintiffs obtained no title thereto under the alcalde grant and the subsequent confirmatory statutes, ordinances and patents, and the land belongs to the United States. They would fail because of the weakness of their own title. On this question of fact the superior court found that the parcel was not within said military reservation. It is claimed that this finding is contrary to the evidence.

The proclamation of the President on December 31, 1851, by which this reservation was made, described it as follows: "The promontory of Point Jose within boundaries not less than eight hundred yards from its northern extremity." The survey of the reservation was regularly made by the officers of the war department of the United States in 1874. A duly certified copy of the map of this survey on file in the War Department was put in evidence by the plaintiffs. It shows that the reservation was surveyed and measured upon the theory that it was bounded by the circumference of a circle having a radius of eight hundred yards in length, the northern extremity of Point Jose being the center of said circle. If the lines of the reservation are fixed in this manner the lot would not be within the reservation.

The claim of the appellants is that the description must be interpreted to mean that the reservation should consist of a square the sides of which run east and west and north and south, respectively, and located so as to be tangent to the circle aforementioned. If fixed in this manner the lot in controversy would be within the reservation.

The language of the reservation, taken literally, does not describe a square nor imply that a square was intended, but does describe a circle with an eight hundred yard radius. Taken alone, the description, on the appellants' theory, would be indefinite; there would be no means of ascertaining the direction of the sides of the square. The description, assuming that a square was intended, would permit the sides to be set at any angle. If the sides of the square were tangent at the point of the circle nearest to this lot, the lot would not be within the square. If tangent at points directly east, west, north, and south of the center, the land would fall within the square. The appellants seek to overcome this difficulty by reference to the act of Congress of March 3, 1853, and other acts of Congress, and regulations of the surveyor-general providing for surveys of the public lands to be offered for sale to settlers, and requiring subdivisions thereof to be made in rectangular form upon east and west and north and south lines. The answer to this proposition is that the acts in question relate exclusively to the public lands of the United States, while the land in controversy, being within a grant from Mexico to San Francisco, afterward confirmed by the United States authorities, was not public land of the United States within the meaning of said acts and regulations. They do not apply to land within the pueblo grant. The claim that section 7 of the act of 1853 extended the boundary of the Point Jose reservation to the distance of one mile from the northern extremity is untenable. The act merely declares that no pre-emption claim shall be allowed upon land within a military reservation, or within one mile thereof. Such a declaration does not extend the limits of the reservation referred to, but leaves them as they were at the time of its passage.

We are of the opinion that the finding that the lot is outside the reservation is supported by the War Department map above mentioned as well as by the language of the proclamation when applied to the physical facts stated above. The map shows that the United States authorities located the boundary of the reservation by drawing a circle with a radius of eight hundred yards, having its center at the northern extremity of the point. The most that could be said in favor of the appellants here is that the description contained in the presidential proclamation left the boundary and the shape

of the reservation indefinite. If this be so, the government would have authority to determine its form and fix its limits. This it has done, and the map is competent evidence of the fact. (*Galvin* v. *Palmer,* 113 Cal. 54, [45 Pac. 172].)

The act of Congress of July 1, 1870, [16 U. S. Stats. 186], disposed of certain parts of the land within the aforesaid military reservation, relinquishing the same to the city and county of San Francisco, in trust, to convey the lands not included in the streets and alleys to the persons, severally, who, at its date, were in the actual *bona fide* possession of parcels thereof. Inasmuch as this land is outside of the reservation and the act purports to dispose only of parts of the land lying within the reservation, it necessarily follows that the act has no bearing on the title of either party. Therefore, the court did not err in excluding evidence offered by the appellants to show that other persons than plaintiffs and their predecessors in interest were in possession of the land at the time of the passage of that act.

The decision in *Naglee* v. *Palmer,* 50 Cal. 641, 644, is irrelevant to the issue. It declared that certain alcalde deeds to lands lying within the military reservation were void. The decision was obviously based upon the fact that the reservation had withdrawn them from the pueblo grant to San Francisco. Such a decision is no authority with respect to land lying outside of the reservation. We find no other points which deserve discussion.

The judgment and orders appealed from in the respective cases are each affirmed.

Melvin, J., Lorigan, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.